**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack John VIRGA, Defendant-Appellant.**

**No. 632, Docket 33598.**

United States Court of Appeals, Second Circuit.

Argued March 25, 1970.

Decided May 18, 1970.

---

18. 257 Iowa 911, 135 N.W.2d 639 (1965).

19. *Id.* 135 N.W.2d at 643.

20. 21 A.D.2d 558, 251 N.Y.S.2d 548 (1964).

Joel A. Brenner, New York City (Milton Adler, The Legal Aid Society, New York City, on the brief), for defendant-appellant.

David G. Trager, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty. for the Eastern District of New York, Louis R. Rosenthal, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMENFELD, District Judge.*

BLUMENFELD, District Judge:

Following a jury trial in the United States District Court for the Eastern District of New York, appellant was convicted on three counts of possession and sale of counterfeit money in violation of 18 U.S.C. § 472. He was sentenced to concurrent five year terms of imprisonment on each count. He appeals on the alternative grounds that he was denied the right to a speedy trial, and that he was denied due process in the sentencing procedure. He does not assert any error in the conduct of the trial. We affirm the conviction and leave the sentence undisturbed.

I.

Virga was arrested on June 8, 1966, on charges of possession and sale of counterfeit currency allegedly committed on that day and on May 25, 1966. At the arraignment before a commissioner the next day, he was represented by Attorney Frederick Abrams, an associate of Attorney Maurice Edelbaum, and released on bail.

It was a year later, on June 1, 1967, that appellant was indicted by a grand

* Of the District of Connecticut, sitting by designation.

jury and arraigned on that indictment on June 27, 1967. Again, Mr. Abrams appeared as counsel for the defendant, who pleaded not guilty.

In the interim between arrest and indictment on these federal charges, appellant was convicted on unrelated state charges and sentenced to 2½ to 5 years at Clinton Prison.[1] Although he was represented by Mr. Edelbaum's office on these state charges, he seems thereafter to have been at odds with Mr. Edelbaum. Apparently he brought two pro se *coram nobis* applications in the state court in January 1968 alleging that Mr. Edelbaum had coerced him to plead guilty to the state charges. Despite Virga's claim that he dismissed Attorney Edelbaum in late 1967, Edelbaum's associate, Mr. Abrams, appeared in federal court on July 3, 1968, to answer the call of Virga's case on the calendar. At the call, Mr. Edelbaum's card showed he had seven cases on the docket of which four had been assigned for prompt disposition under the crash program then in operation in the Eastern District. Not being one of those four, Virga's case was adjourned to January 1969 without objection.

The first inkling the court had of anything other than complete acquiescence in the progress of his case came on October 25, 1968, when Virga filed a pro se motion to dismiss for want of a speedy trial. Finding Virga had not shown "substantial prejudice," Judge Judd denied the motion on November 19, 1968, with leave to renew before the trial judge if the claimed unavailability of witnesses and prejudice thereby could be substantiated. Also on November 19, 1968, Abrams, who was present at this hearing, moved to have his office relieved as counsel. The court granted his motion and other counsel was assigned to rep-

resent Virga. Virga's motion to dismiss on sixth amendment grounds was renewed by his newly assigned counsel on December 18, 1968, and again denied on January 2, 1969. It was again renewed and denied on January 14, 1969, the date his case went to trial. Elaborate discussion is not called for to support the rulings of the court below denying the appellant's motions.

■ Virga's failure to request a speedy trial is by the rule in this circuit a waiver of his sixth amendment claim. United States v. Aberson, 419 F.2d 820 (2d Cir. 1970); United States v. Maxwell, 383 F.2d 437, 441 (2d Cir. 1967), cert. denied, 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968); United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). "Even were we to treat the [October 25, 1968] motion to dismiss * * * as a demand for a speedy trial, which we do not,[2] it would not avail [the appellant] because [he] was speedily tried thereafter." United States v. Maxwell, *supra* 383 F.2d at 441. Furthermore, there was ample basis for a finding that he acquiesced in the rate of progress toward trial until October 25, 1968.

Virga's proffered excuses for failure to demand a speedy trial are unpersuasive. His contention that he was under the impression that his case had been dismissed when he was remanded to Clinton Prison from West Street in November 1967 was too fanciful to be given any credence. Cf. United States v. McIntyre, 396 F.2d 859, 861 (2d Cir. 1968), cert. denied, 393 U.S. 1054, 89 S.Ct. 695, 21 L.Ed.2d 697 (1969). And his explanation that he had relieved Edelbaum in late 1967 and that, therefore, Edelbaum's office had no authority to consent to an adjournment on July 3, 1968, under-

---

1. His presence to plead having been obtained by writ of habeas corpus *ad prosequendum* he was then taken to the Federal Detention Center. His detention there until November 1967, when he was returned to Clinton Prison, is not attrib-

utable to federal authorities and is of no significance. He was a state prisoner.

2. At the hearing before Judge Judd on November 19, 1968, Virga emphasized: "I did not ask for a speedy trial, I asked for a dismissal * * *."

cuts his argument. Without counsel, he would have been free to act in his own behalf, which his pro se applications in both the state and federal court show he was capable of doing. Yet he never took any steps to learn of the progress of his case or to press for a trial.

■ We find no merit in his other arguments on this issue. He showed nothing to support his claim that he was prejudiced [3] and it is obvious that whatever delay occurred was not purposeful or oppressive. United States v. McIntyre, *supra*, 396 F.2d at 862.

## II.

■ Appellant claims error in the court's refusal to grant his request for a copy of the presentence report before imposition of sentence. Rule 32(c) (2) Fed.R.Crim.P. provides in pertinent part:

"The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation and afford an opportunity to the defendant or his counsel to comment thereon."

While we have expressed the view that "the administration of justice would be improved by a liberal and generous use of the power to disclose," United States v. Fischer, 381 F.2d 509, 512 (2d Cir. 1967), cert. denied, 390 U.S. 973, 88

S.Ct. 1064, 19 L.Ed.2d 1185 (1968), the matter of disclosure rests in the sound discretion of the sentencing judge. *Id.* 381 F.2d at 513; United States v. Holder, 412 F.2d 212, 215 (2d Cir. 1969).

■ There was no abuse of discretion in Judge Rayfiel's failure to disclose the contents of the presentence report in this case. The defendant was fully apprised of those elements of his prior record which the judge considered in sentencing and was given full opportunity to respond. See *Id.*

■ Virga also contends that denial of an opportunity to see the presentence report deprived him of his rights of due process and confrontation under the fifth and sixth amendments. We adhere to prior decisions holding that the type of claim here asserted by Virga is not of constitutional magnitude. United States v. Fischer, *supra*, 381 F.2d at 511; cf. Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Thus, if disclosure of the presentence report is to be made mandatory, that must be accomplished through amendment [4] to the rules, not by court decision.

Affirmed.

3. The record reveals that his conviction was based on sales of counterfeit $10 and $20 bills to government agents while the transaction was under surveillance, and that he had $15,000 of such currency in a paper bag when he was arrested.

4. Such an amendment to Rule 32 has been proposed by the Advisory Committee on Criminal Rules and submitted, through the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, to the bench and bar. As proposed, the rule would provide:

"Before imposing sentence the court *shall* permit the defendant, and his counsel if he is so represented, to read the report of the presentence investigation unless in the opinion of the court the report contains information which if disclosed would be harmful to the defendant or other persons; and the court *shall* afford the defendant or his counsel an opportunity to comment thereon." Fed.R.Crim.P. 32.2(c) (1) Prelim. Draft, Jan. 1970, reported at 48 F.R.D. 553, 614–15 (1970) (emphasis added).