Philip ROSATI, Petitioner,

v.

James F. HARAN, Chief, United States Probation Department, Eastern District of New York, Respondent.

No. 77 C 1703.

United States District Court, E. D. New York.

Dec. 23, 1977.

Martin Erdmann, The Legal Aid Society, New York City by Phyllis Skloot Bamberger, New York City, Attorney-in-Charge, Federal Defender Services Unit, for petitioner.

David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y. by Jan F. Constantine, Asst. U. S. Atty., Brooklyn, N. Y., for respondent.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner brings this action under 28 U.S.C. § 1361 to obtain an order directing this Court's Probation Department to recall a presentence investigation report (PIR) prepared in earlier criminal proceedings against petitioner, to excise from it statements petitioner challenged at the sentencing hearing, and to issue a new redacted report.

On November 11, 1976, petitioner was found guilty, following a jury trial, of conspiracy to import and possess, and importation and possession of hashish oil, in violation of 21 U.S.C. §§ 841(a), 952(a), 960(a)(1), and 960(a)(2).[1] On February 18, 1977, he was sentenced by this court as a youth offender, pursuant to 18 U.S.C. § 5010(b), and is now confined at the Federal Correctional Facility at Lompoc, California.

At the time of sentencing, petitioner's counsel objected to certain statements contained in the PIR. Specifically, counsel took issue with the assertion that unidentified government agents believed, on the basis of their investigation, that Rosati had "acted as a type of 'mule' for a well organized heroin ring" during several trips he had made to India, PIR at 5,[2] and requested a hearing for the purpose of controverting the assertion.[3] Sentencing Minutes (SM) at

9–10. In addition, counsel objected to the statement that Rosati's work record was "for the most part" unverifiable, PIR at 9, 19,[4] and attempted to demonstrate that the statement was unsupportable. After permitting the government to respond to these objections, this court imposed sentence on petitioner, noting that it did so solely on the basis of the evidence adduced at trial and without regard to the disputed matters. *Id.* at 19. The court also directed that the sentencing minutes be transcribed and forwarded to the institution of incarceration. *Id.* at 25.

Petitioner in effect renews here his contention that the challenged statements are unsubstantiated and inaccurate, and now claims that these statements have had an adverse effect both on his custody status at the Lompoc facility and on his prospects for parole.[5] Respondent raises the threshold

1. The conviction was affirmed by the Court of Appeals, without opinion, on June 23, 1977. *United States v. Rosati*, 562 F.2d 39 (2 Cir. 1977).

2. According to the PIR, these agents further indicated that petitioner would not be prosecuted for the alleged activity for want of "concrete evidence." PIR at 5.

3. Counsel also objected to the characterization of petitioner as refusing to cooperate with federal agents, inasmuch as petitioner continued to maintain his innocence. Sentencing Minutes at 11. Petitioner does not now press this objection.

4. This statement appears twice in the PIR, first under subheading (3), "Personal History," and again under subheading (13), "Evaluative Summary." It is not clear whether the officer who prepared the report was concerned with the number of jobs verified or the number of months accounted for. A summary of petitioner's employment history from November 1973 through January 1977 is set forth under subheading (10). Of the six occupations listed for this 39-month period, four, totalling approximately seven months, were verified in detail by the probation officer. With respect to a fifth, petitioner's claim that from November 1973 through August 1974 he was employed by his father's company in Los Angeles on an "off the books basis," the officer was able to ascertain only the fact of petitioner's employment, but not the duration, rate of pay or nature of the job performed.

The dispute, however, appears to center on the period from October 1974 through May 1,

1976, the date on which petitioner was arrested. Petitioner claims that during this period he was engaged in the business of importing various goods and artifacts from India. The probation officer was skeptical of this claim, and noted that petitioner offered "no verification of this business, was unable to estimate his profit, and although requested to do so, failed to provide this office with copies of his income tax returns for 1974 or 1975." PIR at 17. This claimed occupation is specifically alluded to in both instances in which the probation officer observed that petitioner's employment history was largely unverified.

Verification of this period of employment is of some importance to petitioner because verified employment for six months or more during his last two years in the community will entitle him to one point toward his "salient factor score," the Parole Commission's quantification of an inmate's "parole prognosis." The parole prognosis, in turn, is one of the two factors (the other is the "offense severity rating") used to determine the amount of time an inmate customarily is to serve prior to release on parole. See 28 C.F.R. § 2.20. Should the Parole Commission deem petitioner's claim of employment as an importer unverified, he will have at most five months of verified employment to his credit during the critical two-year period.

5. At the time this action was commenced, petitioner had not yet submitted to an initial parole release hearing. He maintains, however, that the challenged allegations of the PIR could, by increasing his offense severity rating and reducing his salient factor score, cause his reten-

objection that petitioner has failed to demonstrate that the challenged materials have operated to his prejudice. Respondent does, however, concede that the report has been used by prison officials at Lompoc to classify petitioner at a medium level of custody. On this state of the facts, and because the issues raised are essentially of first impression, it is necessary at least to determine whether this action properly sounds in mandamus, and, if so, whether the petition sets forth a sufficient basis for granting the relief sought.

## I.

■■ As noted above, jurisdiction in this action is asserted under 28 U.S.C. § 1361, which confers on federal district courts jurisdiction of actions "in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to plaintiff." The law is settled that "the mandamus remedy is an extraordinary one, and it is to be utilized only under exceptional circumstances . . . ." *Haneke v. Secretary of Health, Education and Welfare*, 175 U.S.App.D.C. 329, 334, 535 F.2d 1291, 1296 (1976). Three elements generally must be satisfied before the writ may issue: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2 Cir. 1972). See also *Haneke, supra*, 175 U.S.App.D.C. at 334, 535 F.2d at 1296 n. 15.

■ Petitioner does not contend that excision of the challenged statements is expressly required by any pertinent statute or regulation. Rather, he urges that because certain governmental agencies rely on the PIR as a source of information when making determinations that affect protected interests, and do not afford the defendant an adequate opportunity to contest the accuracy of its contents, due process requires the excision of statements alleged by the de-

fendant to be inaccurate and unsubstantiated when the sentencing court has not found them to be otherwise. Although the traditional formulation of the prerequisites to mandamus include a clear right in the plaintiff to the act sought and a clear duty of the defendant to perform it, mandamus will not be precluded solely because judicial construction is required to clarify the duty. See *Knuckles v. Weinberger*, 511 F.2d 1221 (9 Cir. 1975); *Martinez v. Dunlop*, 411 F.Supp. 5 (N.D.Cal.1975); *Lyons v. Weinberger*, 376 F.Supp. 248 (S.D.N.Y.1974). Thus, mandamus will lie not only where a federal officer has failed to comply with a specific statutory or regulatory directive, see *Lyons, supra*, 376 F.Supp. at 255; *Leonhard v. Mitchell*, 473 F.2d 709, 713 (2 Cir.), cert. denied, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973), but also where a constitutionally mandated duty has not been performed. See *Frost v. Weinberger*, 515 F.2d 57, 62 (2 Cir. 1975); *Mattern v. Weinberger*, 519 F.2d 150 (3 Cir. 1975); *Martinez v. Richardson*, 472 F.2d 1121 (10 Cir. 1973); *Andujar v. Weinberger*, 69 F.R.D. 690, 694 (S.D.N.Y.1976). In *Frost*, for example, the Second Circuit held that § 1361 provided a jurisdictional basis where plaintiffs alleged that they had been denied procedural rights recognized by the Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Thus, resolution of the issues raised by petitioner requires an examination of the post-sentencing uses of the PIR, and a determination of whether these uses impinge on interests within the purview of the due process clause.

## II.

### A.

The mandate for preparation of the PIR is contained in Rule 32(c) of the Federal Rules of Criminal Procedure. As amended in 1975, Rule 32(c)(1) requires preparation of a PIR by the district court's probation department prior to the imposition of sen-

---

tion in custody for the full 48 months permitted under 18 U.S.C. §§ 5010(b), 5017(c). See 28

C.F.R. § 2.20, as amended, 41 Fed.Reg. 37316, 37323–24 (Sept. 3, 1976).

tence, unless it is waived by the defendant with the court's permission or the court expressly finds that the trial record contains "information sufficient to enable the meaningful exercise of sentencing discretion." Although the PIR is assembled in the first instance for use by the sentencing judge, Rule 32(c)(2), which prescribes the kind of information that is to be included in the report, clearly contemplates that the PIR will be utilized by those agencies that are involved in the correctional process:

"The report of the presentence investigation shall contain any prior criminal record of the defendant and such other information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court."

If the defendant is sentenced to a term of imprisonment or, as here, is committed to the custody of the Attorney General pursuant to the Youth Corrections Act, 18 U.S.C. § 5010(b), the PIR is forwarded to both the Bureau of Prisons and the institution of confinement, and becomes part of the defendant's correctional file. See Bureau of Prisons Policy Statement No. 7200.17 (Oct. 23, 1975); United States Probation System, Operations Manual, ¶¶ 2.39, 3.3 (Administrative Office, July 2, 1973). During the defendant's orientation period at the correctional institution, which lasts approximately 30 days, 18 U.S.C. § 4205(d), or, in the case of a youth offender, his stay at a classification center or agency for a similar period,

18 U.S.C. § 5014,[6] a classification study is prepared by institutional staff, and the PIR serves as a primary source of data. See Bureau of Prisons Policy Statement No. 7200.17, supra; Operations Manual, supra, at ¶ 3.3; Probation Division, The Presentence Investigation Report at 1 (Administrative Office Publ. No. 103, 1965). The classification study, in turn, provides the basis for determining the adult or youth offender's custody status and treatment program. Cf. 18 U.S.C. §§ 4001(b)(2), 4081, 5015(a).

The United States Parole Commission is the other agency that makes use of the PIR.[7] In the case of a prisoner who has been sentenced pursuant to 18 U.S.C. § 5010(b), an initial parole determination hearing must be conducted "[a]s soon as practicable after commitment," 18 U.S.C. § 5014, although the prisoner may waive his right to parole consideration, 18 U.S.C. § 4208(a); 28 C.F.R. §§ 2.11(b), 2.12(a). The PIR is among those materials that must be considered by the panel at this initial parole determination hearing. 18 U.S.C. § 4208; 28 C.F.R. § 2.19(a)(3). On the basis of information presented at the hearing,[8] the panel formulates a guidelines evaluation statement, which consists of the panel's assessment of the inmate's "offense severity rating" and "salient factor score," the two components of the test used to determine the Paroling Policy Guidelines range for the amount of time the prisoner will customarily be required to serve prior to release on parole. See 28 C.F.R. §§ 2.13, 2.20. If the prisoner has satisfied the three statutory prerequisites to parole,[9] and is

---

**6.** The center or agency's findings and treatment recommendations are forwarded to both the Bureau of Prisons and the Parole Commission. 18 U.S.C. § 5014. It should be noted that the Bureau of Prisons is required periodically to re-examine all youth offenders in its custody. 18 U.S.C. § 5016.

**7.** The Commission is responsible for parole release decisions for all federal prisoners. Subject only to a limited number of exceptions not here relevant, the procedures for parole consideration established by the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–18, for adult offenders, apply as well to individuals

sentenced under the Youth Corrections Act, 18 U.S.C. §§ 5005–26. See 18 U.S.C. § 5005.

**8.** Pursuant to 18 U.S.C. § 5014, the findings and recommendations of the classification agency or center must be forwarded to the Commission upon completion. See note 6 supra. An essentially identical requirement applies to adult offenders. 18 U.S.C. § 4205(d).

**9.** The criteria for adult offenders, 18 U.S.C. § 4206(a), are now incorporated by reference in 18 U.S.C. § 5017(a). These are (1) that the applicant has "substantially observed" institutional rules; (2) that his release "would not

otherwise eligible, the guidelines evaluation provides the basis for the panel's recommendation that parole be granted or denied, although recommendations outside the guidelines may be made "[w]here the circumstances warrant." 28 C.F.R. § 2.20(c); 18 U.S.C. § 4206(b).

The PIR is thus an important tool in the federal correctional system, and the need for the accuracy of the information it contains provided the impetus for the 1975 amendments to Rule 32(c)(3). Unfortunately, neither these amendments nor their legislative history reveals fully the role to be played by the courts. As originally proposed by the Advisory Committee and approved by the Supreme Court, Rule 32(c)(3)(A) would have provided the defendant, or his counsel, with an opportunity prior to sentencing to inspect the PIR and to comment on its contents. Congress went a step farther, however, permitting the defendant, subject to the court's discretion, to introduce evidence to rebut or correct alleged inaccuracies in the report.[10]

The House Judiciary Committee, which drafted the present version of Rule 32(c)(3), focused on the interests of the criminal defendant at the time of sentencing in explaining the modification it had made to the Advisory Committee's proposal: "Since the presentence report is to be used by the court in imposing sentence and since the consequence of any significant inaccuracy

can be very serious to the defendant, the Committee believes that it is essential that the presentence report be completely accurate in every material respect. The Committee's addition to subdivision (c)(3)(A) will help to insure the accuracy of the presentence report." H.R.Rep. 94–247 at 18 (1st Sess. 1975), U.S.Code Cong. & Admin. News 1975, pp. 674, 690.[11] There is no indication, however, in the legislative history, that Congress expected the courts, even where full disclosure occurs, to conduct fact-finding hearings with respect to information considered unrelated to the imposition of sentence.

The exact obligations of the district court's probation department, the agency responsible for the preparation of PIR's, are no more clearly defined. Apart from the general description set forth in Rule 32(c)(2), the standards to be observed by the probation officer in conducting the presentence investigation and presenting the results in the PIR have been left to regulation by the district courts and the probation system. The Probation Division of the Administrative Office of the United States Courts, which shares with the district courts the responsibility for supervising the work of federal probation officers, see 18 U.S.C. § 3656, has adopted as its standard a fourteen-point outline of the information to be included in the PIR.[12] See Operations Man-

---

depreciate the seriousness of his offense or promote disrespect for the law"; and (3) that his "release would not jeopardize the public welfare." See also 28 C.F.R. § 2.13(c).

**10.** As will be discussed more fully below, this had become the practice in this circuit prior to the amendment to Rule 32(c)(3), by virtue of the defendant's right of allocution provided by Rule 32(a). See, e. g., *United States v. Malcolm*, 432 F.2d 809 (2 Cir. 1970).

**11.** The Advisory Committee, despite its less ambitious proposal, had adopted a broader view, noting that "accuracy of sentencing information is important *not only to the defendant* but also to the correctional treatment of a convicted offender." Adv.Comm.Note to Fed.R. Crim.P. 32(c)(3)(A) (emphasis added).

That Congress was concerned primarily with the impact of inaccuracies in the PIR on the interest of the defendant in receiving a fair

sentence is confirmed by its acceptance, without modification, of the Advisory Committee's proposal for paragraph (B) of Rule 32(c)(3), which requires that when the contents of the PIR are deemed nondisclosable under paragraph (A), the defendant is to be provided with a summary of only that data upon which the court intends to rely in imposing sentence. In such cases, comment and rebuttal is effectively limited to information the court deems relevant to sentencing.

**12.** The approved outline consists of the following marginal headings and subheadings:
Offense
   Official version
   Statement of codefendants
   Statement of witnesses, complainants and
     victims
Defendant's Version of Offense
Prior Record
Family History

ual, *supra*, ¶ 2.2(c)(1). In addition, the Probation Division has developed a number of guidelines for preparation of the PIR. See The Presentence Investigation Report, *supra* ; Operations Manual, *supra*, ch. 2.

Obviously, the probation officer must exercise some discretion in separating relevant from irrelevant information, and in distinguishing verifiable fact from inference and subjective conclusion. But to go further, in effect to "screen out" data material to sentencing, would be an abuse of the probation officer's discretion and an arrogation of the court's own authority to determine the importance of information in the imposition of sentence. See, *e. g., United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

### B.

■ As the history of Rule 32(c) suggests, challenges to the accuracy of PIR's are neither surprising nor novel. The federal courts have, however, regarded such challenges as addressed not to the propriety of including the challenged information in the report, but to the narrower question of whether a sentencing court can rely on allegedly inaccurate information as a basis for imposing sentence. This perspective is not purely fortuitous; the courts have never retreated from the historical principle that prior to imposing sentence, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). See *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Malcolm*, 432 F.2d 809, 816 (2 Cir. 1970); *United States v. Schipani*, 435 F.2d 26 (2 Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971); *United States v. Doyle*, 348 F.2d 715 (2 Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). In *Williams*, which remains the leading case in this area, the Supreme Court held that due process does not limit the information to be relied upon in sentencing to "that given in open court by witnesses subject to cross-examination," 337 U.S. at 250, 69 S.Ct. at 1084, and described the Rule 32 PIR as a "manifestation of the historical latitude allowed sentencing judges." *Id.* at 246, 69 S.Ct. at 1082. The federal courts have since held that the sentencing judge need not limit his inquiry to the details of the offense of which the defendant has been convicted, but may also consider his prior criminal record, see *Williams v. Oklahoma*, 358 U.S. 576, 583–84, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); conduct underlying dismissed counts of the indictment, *United States v. Doyle*, 348 F.2d 715, 721 (2 Cir. 1965), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); evidence of crimes for which the defendant has neither been convicted nor tried, *United States v. Cifarelli*, 401 F.2d 512, 514 (2 Cir. 1968), *cert. denied*, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968); and even evidence of criminal conduct excluded at trial because illegally obtained, *United States v. Schipani, supra*, 435 F.2d at 28. Reliance on information of this kind is the logical outgrowth

Defendant
Parents and Siblings
Marital History
Home and Neighborhood
Education
Religion
Interests and Leisure-Time Activities
Health
  Physical
  Mental and emotional
Employment
Military Service
Financial Condition
  Assets

    Financial obligations
    Evaluative Summary
Presentence Investigation Report, *supra*, at 9. A fifteenth heading, "Recommendation," is to be included only if requested by the court. *Id.* at 21. See also ABA Standards, Probation § 2.3 (1970). The Judicial Conference's Committee on the Administration of the Probation System has also approved a less extensive PIR outline for use in most misdemeanor and certain felony cases. See Probation Division, The Selective Presentence Investigation Report (Administrative Office Publ. No. 104, 1974).

of what Justice Black described as the "modern philosophy of penology, that the punishment should fit the offender and not merely the crime." *Williams v. New York, supra,* 337 U.S. at 247, 69 S.Ct. at 1083. As stated by the Second Circuit in *Doyle, supra* :

> "The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity closely related to the crime at hand." 348 F.2d at 721.[13]

The broad discretion permitted the sentencing judge *to inquire* into the background and behavior of the convicted offender must, of course, be viewed in light of the constitutional limitations on the information upon which the sentence may be *based.* In *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the Supreme Court held that the imposition of sentence on an uncounseled defendant on the basis of assumptions about his criminal record which were "materially untrue" was inconsistent with due process. 334 U.S. at 741, 68 S.Ct. 1252. In *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), *Townsend* was extended to require resentencing of a defendant where the sentence imposed by the trial court "might have been different if the sentencing judge had known that at least two of the [defendant's] previous convictions had been unconstitutionally obtained." *Id.* at 447, 92 S.Ct. at 592. The Court therefore affirmed the Ninth Circuit's remand of the case for resentencing without consideration of the defendant's previous unconstitutional convictions.

In its most recent pronouncement on the subject, the Supreme Court has held that a State court trial judge may not, consistent with due process, sentence a convicted defendant to death on the basis of information in the PIR withheld from defendant and his lawyer, and which, accordingly, they could neither deny nor explain. *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Rejecting the State's contention that *Williams v. New York* sanctioned the practice, the Court noted that since its decision in *Williams,* the distinction between death and other penalties has been deemed by a majority of the Court to be of constitutional significance, and it has been held that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." 97 S.Ct. at 1205. Although *Gardner* is limited in its application to capital cases, it is perhaps significant that Justice Stevens, who announced the judgment of the Court in an opinion in which Justices Powell and Stewart joined, noted, in response to the State's argument that full disclosure of the PIR would needlessly delay the sentencing process, that "[i]n those cases in which the accuracy of a report is contested, the trial judge can avoid delay by disregarding the disputed material." *Id.* at 1206.

In this circuit, the *Townsend* rationale has been construed to mean that "material false assumptions as to *any facts* relevant to sentencing"—and not merely misconceptions about the defendant's prior criminal record—will render "the entire sentencing procedure invalid as a violation of due process." *United States v. Malcolm, supra,* 432 F.2d at 816. See also *United States v. Robin,* 545 F.2d 775 (2 Cir. 1976); *United States v. Stein,* 544 F.2d 96 (2 Cir. 1976); *United States v. Herndon,* 525 F.2d 208 (2 Cir. 1975). Nonetheless, no court in this circuit appears to have gone so far as to require prior corroboration or substantiation of every allegation of the PIR.[14]

---

**13.** This principle was placed on still firmer ground in 1970, when Congress enacted 18 U.S.C. § 3577, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appro- priate sentence." This section was enacted as part of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922 (2d Sess.). See also 21 U.S.C. § 850.

**14.** Compare *United States v. Weston,* 448 F.2d 626 (9 Cir.), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1971). In *Weston,*

The Second Circuit's most comprehensive attempt to reconcile the due process prohibition against basing a sentence on false or inaccurate information, on the one hand, and the court's right to be apprised of all information material to determining an appropriate sentence, on the other, was made in *United States v. Needles,* 472 F.2d 652 (2 Cir. 1973). In *Needles,* the question presented was whether the sentencing court "was entitled to credit the statements of unidentified undercover agents over defendant's denials and explanations," with respect to an allegation that the defendant, who had pleaded guilty to a charge of unregistered possession of a submachine gun, was engaged in the illicit manufacture and sale of firearms. After noting that *Townsend, Tucker* and *Malcolm* barred reliance on factual inaccuracies in sentencing, the court stated:

"It does not follow, however, that an evidentiary hearing must be held whenever a defendant asserts the falsity of some statement in his pre-sentence report. The sentencing process is designed to encourage the court to take into account a broad array of factors bearing on the nature of both the crime and the defendant. See *Williams v. New York,* 337 U.S. at 248–50, 69 S.Ct. 1079. As such, it does not lend itself to the procedural formality of a trial; there is no definitive set of criteria and no required weight to be allocated to each consideration; many of the matters reviewed cannot be measured, quantified, proved or disproved; and some come from confiden-

---

the Ninth Circuit held, one judge dissenting, that the sentencing court could not shift to the defendant the burden of producing evidence to rebut a seriously prejudicial but uncorroborated allegation of the PIR. According to the PIR, which was prepared after the trial court had made known its intention to impose the statutory minimum sentence of five years for defendant *Weston's* conviction under 21 U.S.C. § 174 (repealed in 1970) for receiving, concealing and facilitating the transportation of a quantity of illegally imported heroin, a number of unidentified federal agents were of the opinion that Weston was the chief supplier of heroin to the western Washington area. Although Weston vigorously denied the allegation, the court deemed itself bound to rely on "a factual matter reliably represented to the Court," and sentenced defendant to the statutory maximum of 20 years. 448 F.2d at 628–30. The sentencing judge did, however, remind defense counsel that a *motion for reduction or modification* of sentence could be made within 120 days after imposition of sentence and would be appropriate if he or defendant could develop facts to contradict the disputed allegation. *Id.* at 629. The judge also directed the government to supply for *in camera* examination "factual material that support the conclusions set forth in the report," and indicated that he would *sua sponte* reduce the sentence if he determined "that there's a reasonable doubt that these statements made are factual, have a factual basis." *Id.* at 630. The court subsequently entered an order in which it concluded that a report submitted by the Bureau of Narcotics and Dangerous Drugs, consisting largely of the unsworn statements of named, but not otherwise identified, informants, supplied a factual basis for the allegations of the PIR and supported the sentence imposed. *Id.*

The Court of Appeals vacated the sentence, finding that the information supplied for *in camera* inspection failed to corroborate the charge made in the PIR and that the "factual basis for believing the charge was almost nil." *Id.* at 633. While conceding that *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), permits reliance on evidence of other criminal conduct as well as hearsay as a basis for sentencing, the Ninth Circuit nonetheless held that the sentencing court had improperly relied on the allegations of the PIR:

"In *Townsend v. Burke,* [334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)], the Supreme Court made it clear that a sentence cannot be predicated on false information. We extend it but little in holding that a sentence cannot be predicated on information of so little value as that here involved. A rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process." 448 F.2d at 634.

The case was remanded for resentencing, with a direction to the district court not to "rely upon the information contained in the presentence report unless it is amplified by information such as to be persuasive of the charge there made." *Id.*

Although *Weston* has been cited with some frequency by the Second Circuit, see, *e. g.,* *United States v. Rosner,* 485 F.2d 1213, 1229 (2 Cir. 1973); *United States ex rel. Cleveland v. Casscles,* 479 F.2d 15, 18 n. 2 (2 Cir. 1973); *United States v. Needles,* 472 F.2d 652, 658–59 (2 Cir. 1973), the court has never fully endorsed or followed the Ninth Circuit's requirement of prior substantiation. *Compare* 21 U.S.C. § 849(b).

tial sources. Hence it has not been required that each statement in a pre-sentence report be established or refuted by presentation of evidence." *Id.* at 657–58 (citations omitted).

The court did go on to hold that the defendant should be afforded an opportunity to state his version of the "relevant facts," [15] and allowed that in some instances the probation department or the prosecution should be required to substantiate the challenged statements. *Id.* at 658. The court also suggested that in appropriate cases the defendant should be permitted to offer proof "on matters the court deems material to its decision on the severity of sentence." *Id.* Determination of the need for such procedures, however, was left to the discretion of the sentencing judge, at least where the defendant does not deny the entire incident alleged in the report. See also *United States v. Rosner,* 485 F.2d 1213 (2 Cir. 1973).

It must be emphasized that *Needles* applies to instances where disputed information is to be relied upon in the sentencing process. Thus, in *United States v. Stein, supra,* where at the time of sentencing the judge labored under certain misconceptions regarding the defendant's record of cooperation with government prosecutors and allegations of prior misconduct, the Second Circuit held that "the judge owed a duty either to explain that she had not been influenced by them *or, if she had been,* to make findings of fact after examining the evidence, which might or might not require a hearing." *Id.* at 102 (emphasis added). In other words, the court's obligation to resolve disputes with respect to allegations seemingly material to sentencing attaches only when the court fails to disclaim an intention to base sentence at least in part on those allegations. Should the sentencing court fail to indicate whether or not it has relied on challenged information, an appeal will lie if

there is "a possibility that the sentence was imposed on the basis of false information or false assumptions concerning the defendant." *United States v. Robin,* 545 F.2d 775, 779 (2 Cir. 1976), *rehearing en banc denied,* 553 F.2d 8 (1977); see also *United States v. Mejias,* 552 F.2d 435 (2 Cir. 1977); *McGee v. United States,* 462 F.2d 243 (2 Cir. 1972). This was not the situation here.

The case law reflects an earnest attempt by the courts to strike a balance between the obligation of the court to conduct a broad inquiry into the defendant's character prior to imposing sentence and the constitutional command that the sentence not be imposed on the basis of incorrect assumptions about the defendant, without converting the sentencing process into the functional equivalent of a second trial. Nearly thirty years ago, Justice Black warned that to read the due process clause as limiting the information on which the sentencing court may rely to the testimony of witnesses subject to cross-examination "could endlessly delay criminal administration in a retrial of collateral issues," and at the same time "hinder if not preclude all courts—state and federal—from progressive efforts to improve the administration of criminal justice." *Williams v. New York, supra,* 337 U.S. at 250–51, 69 S.Ct. at 1085. Although the courts have adopted a consistently expanded view of the due process rights that attach at the time of sentencing, and have increasingly recognized the need for accuracy in sentencing data, neither the case law nor the parallel amendments to Rule 32 have been construed to require that the sentencing court undertake to resolve challenges raised by defendant to data deemed by the court to be immaterial to sentencing.

■ Thus, the now accepted view that "a court's failure to take appropriate steps to ensure the fairness and accuracy of the sentencing process must be held to be plain

15. Citing *United States v. Virga,* 426 F.2d 1320, 1323 (2 Cir. 1970). Although the citation to *Virga,* which concerned the defendant's right to examine the PIR, is not terribly helpful, the Second Circuit has frequently viewed the right of the defendant to offer his version of the facts as part of his right of allocution under Fed.R.

Cr.P. 32(a)(1). See, *e. g., United States v. Robin,* 545 F.2d 775, 779 (2 Cir. 1976); *United States v. Stein,* 544 F.2d 96, 101–02 (2 Cir. 1976); *United States v. Rosner,* 485 F.2d 1213, 1230 (2 Cir. 1973); *United States v. Malcolm,* 432 F.2d 809, 817–18 (2 Cir. 1970).

error" and an abuse of the court's discretion to determine the appropriate procedures for resolving questions as to the accuracy of sentencing information, *United States v. Robin, supra*, 545 F.2d at 779, is of no avail to petitioner, as this court expressly disavowed any reliance on the disputed allegations at the time of sentencing and petitioner does not question the authenticity of that disavowal. His more compelling claim is that because both the Parole Commission and the Bureau of Prisons will rely on the contents of the PIR, these same challenged allegations will adversely affect his further correctional treatment and thereby impinge on interests he claims are subject to constitutional protection.

### III.

■ The Supreme Court has yet to decide whether governmental interference with an inmate's expectation of parole implicates a due process interest requiring procedural safeguards. See *Meachum v. Fano*, 427 U.S. 215, 229 n. 8, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), compare *Morrissey v. Brewer*, 408 U.S. 471, 482 n. 8, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation affects an interest protected by due process), and *Wolff v. McDonnell*, 418 U.S. 539, 565, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), (revocation of prisoner "good-time" credits requires notice and a hearing). Nonetheless, since the 1974 decision in *United States ex rel. Johnson v. Chairman, New York State Parole Board*, 500 F.2d 925 (2 Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), it has been the law in this circuit that an inmate's interest in prospective parole is subject to some due process protection. In *Johnson*, the court of appeals extended the rationale of *Morrissey, supra*, to parole release decisions, but went no further than to hold that upon denial of parole, an inmate is entitled to "a statement of reasons . . . sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all." 500 F.2d at 934. Furthermore, the court did not require detailed findings of fact, "provided the Board's decision is based upon consideration of all relevant factors and if it fur-

nishes to the inmate both the grounds for the decision . . . and the essential facts upon which the Board's decision is based . . . ." *Id.* See also *Haymes v. Regan*, 525 F.2d 540 (2 Cir. 1975) (State parole board need not disclose release criteria, so long as the prisoner is furnished with a statement of reasons and underlying facts supporting denial of parole). Subsequent decisions have substantially affirmed the *Johnson* and *Haymes* holdings, recognizing that "to decide what procedural protections are due in any proceeding requires a balancing of 'the inmate's interest in the proceedings . . . the "need for and usefulness of the particular safeguard in the given circumstances . . . ." [and] any direct burden which might be imposed' " on parole authorities if the procedure is made mandatory. *Williams v. Ward*, 556 F.2d 1143, 1160 (2 Cir. 1977), quoting *Holup v. Gates*, 544 F.2d 82, 85–86 (2 Cir. 1976), *cert. denied*, 430 U.S. 941, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). And recently, the court has described the reasons requirement as "necessary to protect against arbitrary and capricious decisions or actions grounded upon impermissible or erroneous considerations." *Zurak v. Regan*, 550 F.2d 86 (2 Cir.), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). See *Coralluzzo v. New York State Parole Board*, 566 F.2d 375, 378–379 (2 Cir. 1977) (prisoner entitled to a statement of reasons when State parole board fixes a "Minimum Period of Imprisonment" in excess of the statutory minimum, and to access to information in his parole file); *Billiteri v. United States Parole Board*, 541 F.2d 938, 945 (2 Cir. 1976); Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267 (1975). *Cf. Frost v. Weinberger*, 515 F.2d 57 (2 Cir. 1975); *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

Although the cases in this circuit have concerned the adequacy of the procedures accorded parole applicants in both the State and federal systems, the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218, appears to have at least attenuated the bases for procedural objections to federal parole determinations. For ex-

ample, the Act confers on the Parole Commission (successor to the United States Parole Board) the power and obligation to promulgate uniform parole release criteria and guidelines, 18 U.S.C. §§ 4203(a)(1), 4206(a); sets forth minimal standards for release, 18 U.S.C. § 4206(a); requires written notice to the applicant of Commission determinations, including a particularized statement of reasons if parole is denied, 18 U.S.C. § 4206(b), (c); specifies the information which the Commission must consider, including any information submitted by the applicant, 18 U.S.C. § 4207, and provides the applicant with "reasonable access" in advance of the hearing to the reports or documents to be relied upon by the Commission, 18 U.S.C. § 4208(b), (c); [16] and requires that the applicant be permitted to appear and testify on his own behalf at the hearing, 18 U.S.C. § 4208(e). In addition, the Act creates a two-tier system of administrative review of Commission decisions. 18 U.S.C. § 4216.

Petitioner does not undertake to challenge, at least directly, the sufficiency—for constitutional purposes—of the procedures established by the Act and further developed in the regulations adopted by the Commission. Nor does he contend that the Commission may not take into account the contents of an applicant's PIR, an argument rejected by this circuit in *Billiteri v. United States Board of Parole, supra,* 541 F.2d at 944–45 (2 Cir. 1976). Rather, petitioner urges that he will not *in fact* receive a fair opportunity to rebut factual allegations when his case is considered by the Commission.

The court is mindful that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," *Coralluzzo, supra,* 566 F.2d at 380 and that "the definition of minimum due process is often sensitive to what proves necessary *in practice* to a fair procedure," *Williams v. Ward, supra,* 556 F.2d at

1160 (emphasis in original). On the facts here presented, and given the procedural posture of this case, judicial intervention is at best premature. Petitioner in effect seeks to challenge the practical consequences of the procedures observed by the Parole Commission in an action in which the Commission is not a party and before it has had an opportunity to correct whatever inadequacies do in fact exist. To indulge at this juncture in review of the Commission's procedures would be contrary to the "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), quoted in *FCC v. Schreiber,* 381 U.S. 279, 296–97, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). Of course, the requirement of exhaustion of administrative remedies is not immutable. As the Court of Appeals for the District of Columbia has observed, "the exhaustion requirement contemplates an efficacious remedy, and does not obtain when it is plain that any effort to meet it would come to no more than an exercise in futility." *Lodge 1858, American Federation of Government Employees v. Paine,* 141 U.S.App.D.C. 152, 436 F.2d 882 (1970), citing *City Bank Farmers Trust Co. v. Schnader,* 291 U.S. 24, 34, 54 S.Ct. 259, 78 L.Ed. 628 (1934); *Montana National Bank of Billings v. Yellowstone County,* 276 U.S. 499, 505, 48 S.Ct. 331, 72 L.Ed. 673 (1928); *Waite v. Macy,* 246 U.S. 606, 609, 38 S.Ct. 395, 62 L.Ed. 892 (1918). See also *Wallace v. Lynn,* 165 U.S.App.D.C. 363, 367, 507 F.2d 1186, 1190 (1974). Nonetheless, an agency is entitled to the presumption that it "will act properly and according to law," *FCC v. Schreiber, supra,* 381 U.S. at 296, 85 S.Ct. at 1470, a presumption which petitioner has failed to rebut.[17] Thus, at least to the extent that petitioner asserts a denial of due process with respect

---

16. Disclosure under the Act is subject to the same exemptions as provided in Fed.R.Cr.P. 32(c)(3)(A) for the contents of the PIR. See also 21 U.S.C. § 849(b).

17. In support of his contentions, petitioner relies heavily on a study of the federal parole system antedating the effective date of the Parole Commission and Reorganization Act. See Parole Release Decisionmaking and the Sentencing Process, 84 Yale L.J. 810 (1975).

to his interest in prospective parole, he must first pursue his administrative remedies. This is a requirement he cannot circumvent by styling his action as one for a writ of mandamus directed to the probation department, both for reasons of policy which militate against unnecessary interference with agency action, and because petitioner's claim for mandamus relief necessarily turns on the adequacy or inadequacy of the procedural safeguards afforded by the Parole Commission.

■ Because the procedures enacted by Congress and supplemented by the Commission regulations [18] appear to be wholly consistent with due process, and in the absence of a contrary showing by petitioner, it is impossible to find that the relief here sought would add, in any substantial degree, to safeguarding petitioner's right to a parole determination that is not tainted with misinformation. *Cf. Zurak v. Regan*, 550 F.2d 86 (2 Cir.), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *Coralluzzo, supra*. Furthermore, it has been recognized in this circuit that the Parole Board (now the Parole Commission), "which is concerned with all facets of a prisoner's character, make-up and behavior," and therefore shares with the sentencing judge a "wide latitude in taking into consideration all matters bearing upon the personal history and behavior of the convicted accused," is "certainly entitled to be fully advised of the contents of the presentence report and to use it in giving an offense severity rating and for such other purposes that it finds necessary and proper." *Billiteri v. United States, supra*, 541 F.2d at 944, citing *Menechino v. Oswald*, 430 F.2d 403, 407-8 (2 Cir. 1970), *cert. denied*, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), and *Scarpa v. United States Board of Parole*, 477 F.2d 278, 281 (5 Cir. 1973). To afford petitioner the relief he seeks would not only disserve this objective by depriving the Parole Commission of data to which Congress has deemed it entitled, but would also disrupt the scheme of correctional decision making established by Rule 32 and the Parole Commission Reorganization Act, by forcing the sentencing court to choose between extending the sentencing process to resolve disputes concerning material it deems nonessential to sentencing (and thereby depriving parole authorities of their statutory fact-finding role), or denying the Parole Commission information which may bear on the parole release decision. Properly viewed, the question posed by this petition is whether such decisions are to be made by sentencing courts or parole authorities. On the facts of this case, we are unable to hold other than that the Parole Commission is not only competent to decide, but also subject to a statutory obligation to resolve, such disputes if not previously addressed by the sentencing court, and that the procedural safeguards afforded the parole applicant fully satisfy due process requirements.

## IV.

One additional basis for relief remains to be considered. Petitioner contends, and respondent concedes, that the PIR has been used by officials at FCI Lompoc to classify him at a medium level of custody. He believes that but for the challenged contents of the PIR he would have been classified at a "community" rather than medium level of custody, and therefore would have qualified for participation in community activities and furloughs without supervision by corrections officers. By virtue of his present classification, he may participate in such activities only under constant supervision. The question that must be answered at this juncture is whether consideration by the Bureau of Prisons of the challenged contents of the PIR in determining custody classification abridges an interest of the inmate that is subject to due process protection.

Two 1976 decisions of the Supreme Court must be regarded as controlling. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Court held that in the absence of a State law conferring on State prisoners the right to be confined in a particular institution or conditioning prison-

---

18. See 28 C.F.R. § 2.1, *et seq.*, as amended, 41 Fed.Reg. 37323-24 (Sept. 3, 1976).

er transfers on the occurrence of specific events, such transfers implicate no interest requiring the observance of minimal procedural safeguards. *Id.* at 2538–39. The Court so held despite its recognition that prisoner transfers may often be disciplinary in nature and based on allegations of serious misconduct. *Id.* at 2539–40.

The following term, in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Court extended *Meachum* to the administration of the federal prison system, with respect to prisoner classification and eligibility for various rehabilitation programs. See 97 S.Ct. at 274. In *Moody,* the issue was whether a federal prisoner was entitled to immediate execution of a parole violator warrant lodged against him as a detainer. Among the grounds offered by the petitioner in support of his claim was the contention that the pendency of the detainer and warrant had an adverse effect on both his custody status and his ability to participate in certain prison programs. Citing *Meachum,* 96 S.Ct. at 2532, for the proposition that not "every state action carrying adverse consequences for prison inmates automatically activates a due process right," the Court held that because Congress had vested federal prison officials with complete discretion over such conditions, petitioner could claim "no legitimate statutory or constitutional entitlement sufficient to invoke due process." 97 S.Ct. at 279 n. 9. See 18 U.S.C. §§ 4081, 5015(a)(3).

There is, of course, authority in this circuit for the proposition that the classification of a federal prisoner will, in some cases, require the observance of certain basic procedural safeguards. It has been held that the classification of a federal prisoner as a "Special Offender" implicates sufficient interests of the inmate to warrant adherence to minimal procedural due process. See *Cardaropoli v. Norton,* 523 F.2d 990 (2 Cir. 1975); *Catalano v. United States,* 383 F.Supp. 346 (D.Conn.1974). The rationale for this departure from the traditional reluctance of the federal courts to intrude into matters of internal prison management was the finding that Special Offender classification imposes serious disabilities on the inmate, denying him benefits ordinarily available to members of the prison population, including social furloughs, participation in work-release programs and transfer to half-way houses, and frequently impairs his eligibility for early parole. 523 F.2d at 994–95, 383 F.Supp. at 350. In *Cardaropoli,* the Court of Appeals concluded that "the marked changes in the inmate's status which accompany the [Special Offender] designation create a 'grievous loss,' . . . and may not be imposed in the absence of basic elements of rudimentary due process." 523 F.2d at 995 (citations omitted). The court, however, expressly distinguished the Special Offender classification from the kind of classification of which petitioner here complains:

"The serious adverse consequences which flow from the Special Offender designation are found, most significantly, in the total or partial loss of *eligibility* for substantial benefits normally afforded every inmate. Preclusion from access to these benefits entails a loss as grievous as that occasioned by their revocation, for the inmate's stake remains the same in each instance. Moreover, unlike other classifications of newly-admitted inmates (e.g., maximum, medium, or minimum security risks), the Special Offender label cannot be mitigated or removed by reason of the inmate's subsequent behavior, even if it is exemplary." 523 F.2d at 995 n. 11 (emphasis in original).

In contrast to the broad range of benefits systematically withheld from inmates classified as special offenders, the sole benefit petitioner claims he has been denied is eligibility for unsupervised, as opposed to supervised, participation in community programs and furloughs. Although he undoubtedly has some interest in completing his sentence under the more relaxed conditions of community custody, after *Moody v. Daggett* and *Meachum v. Fano* the decision of prison authorities to classify petitioner at a medium level of custody cannot be regarded as implicating the kinds of interests that are subject to due process protection.

Accordingly, the petition must be denied. This determination is, however, without prejudice to any right petitioner may have to seek administrative or eventual judicial review of any action of the Bureau of Prisons or Parole Commission should there arise a factual basis for doing so.

SO ORDERED.