**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Dom SCALZO, James Scalzo and Gary
Scalzo, Defendants-Appellants.**

**Nos. 82–2543 to 82–2545.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1983.

Decided Sept. 1, 1983.*

---

* This opinion has been circulated among all judges of the court in regular active service. No judge favored a rehearing en banc on the question whether certain procedures, hitherto observed in the Fifth Circuit, should be followed by district judges relying for sentencing on confidential and undisclosed information.

Adam Bourgeois, Chicago, Ill., for defendants-appellants.

John W. Vaudreuil, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before CUDAHY and ESCHBACH, Circuit Judges, and GRAY, Senior District Judge.**

CUDAHY, Circuit Judge.

Appellants, Dom Scalzo, James Scalzo and Gary Scalzo, appeal the sentences imposed upon them following a plea agreement. They charge that the presentence investigation reports prepared for each of them, and especially the use of information contained in a confidential report, violated their rights under Fed.R.Crim.P. 32(c)(3). We affirm the judgment of the district court.

I.

The appellants, Dom Scalzo, James Scalzo and Gary Scalzo, were indicted in February 1982 for violations of 18 U.S.C. § 2315 (sale or receipt of stolen goods).[1] On June 7, 1982, the three were charged in a superseding information with a one-count violation of 18 U.S.C. § 371, for conspiracy to violate section 2315 by agreeing to receive, store and sell merchandise involved in interstate commerce which they knew to have been stolen. They pleaded guilty.

** The Honorable William P. Gray, Senior District Judge of the United States District Court for the Central District of California, is sitting by designation.

1. A fourth defendant, Robert Scalzo, was also charged, but his case is not before us on review.

2. In addition to a Confidential Report, the record on appeal also discloses a Supplemental Confidential Report. This latter report, however, is largely duplicative of information con-

A presentence investigation report in relation to each defendant was prepared by Probation Officer Jack R. Verhagen to assist Judge Crabb in sentencing. Mr. Verhagen made the report available to the defendants and their counsel on August 3, 1982, and they reviewed its contents on August 18. However, an additional section of the presentence report—a section based on information obtained upon a promise of confidentiality—was not disclosed to the defendants or their counsel, nor were they apprised of its existence before the sentencing hearing took place. The defendants, however, did submit supplementary information and objections to the presentence report as it had been disclosed to them and filed motions to strike portions which they considered to be false or based on sources which were not credible.

The Scalzos were sentenced at a hearing which took place before Judge Crabb on September 2, 1982. At the beginning of the hearing, Judge Crabb made a statement in which she disclosed the existence of the confidential report,[2] explained its necessity, and summarized the material contained within it upon which she had relied in sentencing:

First of all, I want to inform you that I have received the confidential report from the United States probation officer involving statements of certain individuals who provided information to the probation officer either on their own initiative or after contact with those individuals had been suggested by the resident FBI agent. The individuals who provided this information did so with the understanding that their names would not be

tained in the presentence report which was disclosed to the defendants. The Supplemental Confidential Report was obtained by order of the district court in order to verify information in the presentence report. The Supplemental Confidential Report does indeed corroborate and elaborate on the information which had already been received from various sources and reviewed by the defendants. It also contains additional support for the necessity of maintaining the confidentiality of the source or sources of the information.

disclosed as they expressed fear of retaliation.

The information provided reveals that at least one person has directly overheard James Scalzo discuss the receipt and resale of snowmobiles and lawn tractors which James Scalzo knew to be stolen. Another individual provided information that he had personally observed James and Gary Scalzo unloading at Scalzo Enterprises what appeared to be stolen lawn tractors.

Record at 4. Judge Crabb also discussed the information contained in the report—both confidential and as originally disclosed—indicating the material upon which she had relied and portions which she had disregarded:

... [T]here are various statements in the presentence report concerning allegations or comments about the defendants' relationships with local law enforcement officers and with figures in organized crime. I want to state for the record that I am disregarding any of that information. I am not satisfied either that it is well-substantiated or that it is material to the sentencing decision that I have today.

Essentially what I looked for in the presentence report for each of the defendants is the answer to the question whether the charges to which they had pled guilty concern two isolated events or whether they represent a pattern of behavior engaged in over a period of time.

My view is that these events appear to be part of a pattern of behavior and I base this conclusion on these factors. First of all, it seems very clear that there was an additional load of hides besides the one to which they have pleaded guilty. There is quite a bit of evidence to indicate that stolen chemicals were received by the Scalzos; not Robert Scalzo, but Dom, Gary and James.

The evidence in support of this comes from the statements that are quoted in the presentence report from Terry Lee Jensen, Gary's admission that he was aware that stolen chemicals were received and Dom's admission that Bagley

was a frequent visitor. There is quite a bit of evidence that the Scalzos again, not including Robert, were involved in the receipt and resale of stolen golf carts, lawn tractors and snowmobiles. The evidence in support of this is again Terry Jensen—the incident in which stolen golf carts were discovered at a golf course after apparently the roof had fallen in at the clubhouse ... again Dom Scalzo's admission that Bagley was a frequent visitor and the other confidential information that I've referred to earlier that Jim and Gary Scalzo had been seen unloading carts at Scalzo Enterprises and confidential information that James Scalzo had been overheard discussing the receipt of stolen lawn tractors.

Record at 4–6.

Each defendant was then called separately for sentencing. Each admitted that he and his counsel had reviewed the presentence report. Gary Scalzo's attorney made several objections. First, he stated that he had not known of the existence of a confidential report and argued that there was an insufficient showing of the necessity for non-disclosure. Second, he challenged the judge's assertion that Gary Scalzo had made any admission in relation to the receipt of stolen chemicals. Third, he asked to be allowed to cross-examine the Probation Officer, Mr. Verhagen, about the reliability and credibility of both the confidential informants and of Terry Lee Jensen. Judge Crabb, pointing out that Officer Verhagen had interviewed all of the informants himself and that Jensen's information was offered as a declaration against penal interest and was only relied upon to the extent that it described his personal involvement in the criminal scheme, denied the request to cross-examine Verhagen.

James Scalzo's counsel requested that he be allowed to see the confidential section of the presentence report under conditions which would protect its confidentiality. The court denied this request. He also objected to the fact that the individual presentence report frequently referred to conduct and activity by "the Scalzos" and thus

was a group rather than individual assessment.[3] Dom Scalzo's attorney endorsed the arguments made by the other two attorneys.

Gary Scalzo was sentenced to two and a half years incarceration and a $10,000 fine. James Scalzo was sentenced to three years incarceration, and a $10,000 fine. Dom Scalzo was sentenced to six months incarceration, three years probation, a $10,000 fine and restitution totalling $71,711. The maximum sentence for a conviction under 18 U.S.C. § 371 is five years incarceration and a $10,000 fine. In this appeal, the Scalzos ask that we reverse the judgment and remand the case for resentencing, on grounds related to the district court's use of both the confidential report and the presentence report which was disclosed to the defendants. With respect to the confidential report, appellants charge that there was an insufficient showing that nondisclosure was necessary and they contend that the summary provided by the trial judge was inadequate. As to the presentence report which was disclosed, they challenge the judge's assertion that Gary Scalzo ever admitted receipt of stolen chemicals; they raise several general issues about the credibility of the informants and the reliability of the information upon which Officer Verhagen based the report; and they argue that the judge relied upon generalized information about the group of defendants in making sentencing decisions about individuals. In addition, they contend that the sentences imposed were excessive in view of the total circumstances of this case. We will discuss each of these contentions in turn.

## II.

The right of a defendant to be sentenced on the basis of accurate information is fundamental and undisputed. *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The concern that an individual might be sentenced to a term longer than he or she would otherwise have been adjudged to deserve, based upon inaccurate information contained within a presentence investigation report, has led to a long and ongoing controversy over nondisclosure of these reports to defendants and their counsel. *See* Fed.R.Crim.P. 32 advisory committee note; 3 C. Wright, FEDERAL PRACTICE AND PROCEDURE § 524 (1982); 8A J. Moore, MOORE'S FEDERAL PRACTICE ¶ 32.03[4] (2d ed. 1981); Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613 (1980). When Rule 32 of the Federal Rules of Criminal Procedure was amended in 1975, therefore, disclosure of the presentence report was made mandatory except under certain limited circumstances. Thus the antidote for the danger of sentences based on inaccurate information was perceived to be submission of that information for testing under the full corrective force of the adversarial process. In the words of the Advisory Committee,

> [t]he best way of insuring accuracy is disclosure with an opportunity for the defendant and counsel to point out to the court information thought by the defense to be inaccurate, incomplete, or otherwise misleading.

Fed.R.Crim.P. 32 advisory committee note. Thus Rule 32 provides, as well, that

> the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

Fed.R.Crim.P. 32(c)(3)(A).

In certain circumstances, however, the court may refuse to disclose information contained in such a report, where

---

**3.** James Scalzo's attorney also challenged the accuracy of certain specific information contained within the report which had been disclosed, and asked to put on his client and his client's wife to testify in refutation of these points. However, despite the trial judge's willingness to allow this testimony, James Scalzo declared himself unwilling to testify. Thus his motion to strike portions of the presentence report was withdrawn.

in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. . . .

Fed.R.Crim.P. 32(c)(3)(A). If the court does decide, as in this case, that a report contains material of such a nature as to require confidentiality, the judge must nonetheless provide a summary of the confidential information he or she has relied upon and allow the defense to comment upon it as well:

the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant or his counsel an opportunity to comment thereon.

Fed.R.Crim.P. 32(c)(3)(B).

■ Appellants in the case before us argue that the district court abused its discretion by failing, in the absence of a sufficient showing of the necessity for confidentiality, to disclose confidential materials. They cite no case or cases, however, in support of their contention that such a showing of necessity must be made before the judge may refuse to disclose material. The language of Rule 32 consigns this decision to "the opinion of the court," and Judge Crabb did state for the record that her reasons for nondisclosure were that

[t]he individuals who provided this information did so with the understanding that their names would not be disclosed as they expressed fear of retaliation.

Record at 4. Having reviewed the nondisclosed information, this court cannot say that Judge Crabb abused her discretion in concluding that the material should remain confidential.

Having concluded that the district court was well within its discretion in refusing to disclose portions of the presentence report in this case, the principal question for re-

view is the adequacy of the summary provided by the court. The summary required by Rule 32(c)(3)(B) may be either oral or in writing and need only contain the information upon which the judge intends to rely in determining sentence; the defendant or his counsel is then to be given an opportunity to comment on the information. Although this opportunity to comment is presumably the analogue of the opportunity offered under Rule 32(c)(3)(A) in relation to a report which is fully disclosed, this adversarial corrective for possible inaccuracies is inherently more difficult where information is confidential. The very disclosure of some matters may necessarily reveal their sources. In discussing the required "summary of factual information," the Fifth Circuit has thus concluded that

the summary should, in a manner as specific as the facts permit, inform the defendant of the nature of the information. . . . The trial court must, on a case by case basis, balance the policy of making disclosure as specific as possible with the need to preserve confidentiality.

*United States v. Woody,* 567 F.2d 1353, 1362–63 (5th Cir.), *cert. denied,* 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978).

■ The summary provided by Judge Crabb in this case fulfills this standard. Judge Crabb delivered an oral summary of the confidential material upon which she had relied and gave each party an opportunity to comment upon it, an opportunity of which the parties availed themselves at some length. Without revealing the sources of the information, or any information which would identify those sources, she provided a summary which specified the facts upon which she was relying: that James Scalzo had been overheard discussing the receipt of stolen lawn tractors and that Jim and Gary Scalzo had been seen unloading what appeared to be stolen lawn tractors. From her handwritten notations on the face of the confidential report and summary, as well as from her statement in court that she was disregarding all information about the defendants' relationship with local law enforcement officers and with fig-

ures in organized crime, it is clear that the reports about stolen lawn tractors were the only ones contained in the confidential report upon which she relied in sentencing. We hold therefore that the summary provided in the case before us was as specific as possible, given the need for confidentiality, and that it fulfilled the requirements of Rule 32(c)(3)(B).

Although we eventually obtained and reviewed the confidential reports in this case [4] and were generally able, due to Judge Crabb's handwritten notations on them, to discern the portions upon which she did or did not rely, the process of appellate review would be greatly facilitated if the procedures required in the Fifth Circuit were followed. *See United States v. Woody,* 567 F.2d at 1362; *United States v. Muniz,* 569 F.2d 858 (5th Cir.1978) (per curiam). We therefore adopt those procedures for prospective application in this circuit.[5]

■ First of all, the trial judge should state on the record whether she is relying on undisclosed information and should provide on the record a summary of the information if she is so relying. Second, if she is relying on this material, she should forward the undisclosed material in a sealed envelope to this court as part of the record on appeal. Third, the sealed materials should include a written statement by the district judge specifying the reasons supporting the decision not to disclose the information as well as the facts underlying the summary provided to the defendant. In other words, she should reveal to us the undisclosed facts upon which she has relied. The statement should contain all the prescribed information but need not be elaborate. With such a record before us we can effectively determine whether the trial court has abused its discretion in deciding not to disclose the information. We can also appraise the adequacy with which it has been summarized.

We believe that an adequate procedure for coping with the review of confidential presentence reports is important because the potential for abuse and unfairness in the use of this information is very substantial. There is a fundamental interest in a criminal defendant's being sentenced on the basis of accurate information. Accuracy can best be assured by the free operation of the adversary process. But the effectiveness of that process is sharply impaired by the requirements of confidentiality. Hence, there is an acute need, where confidential information is considered, for careful and thorough handling in the district court and informed review on appeal.

### III.

We turn now to the issues raised about the portions of the presentence report which were disclosed to the defendants. First, Gary Scalzo challenges "the basis of the court's conclusion that his client had admitted receipt or possession of stolen chemical [sic]." Appellants' Brief at 12. We note, however, that Judge Crabb never stated that Gary Scalzo admitted receipt or possession of chemicals. Rather, as one of the pieces of evidence in support of her conclusion that the offense to which the Scalzos had pled guilty was part of a pattern including, *inter alia,* the receipt of stolen chemicals, she referred to "Gary's admission that he was *aware* that stolen chemicals were received." Record at 5 (emphasis supplied). When challenged by Gary Scalzo's trial counsel, Judge Crabb referred him to page 17 of the presentence report, which he and his client had inspected, and which reads as follows:

He [Gary] also indicated that it was true that Dean Bagley did deliver farm chemicals, used John Deere tractors and some golf carts back in 1974–1975 to Scalzo Enterprises and Jim Scalzo.

---

4. The confidential reports were not transmitted as they should have been—with the record certified to this court prior to oral argument, but rather had to be obtained by the court thereafter.

5. Obviously, the procedures which specifically require the forwarding of documents to this court apply only to cases from which appeals are taken.

Gary Scalzo Presentence Report at 17. The report goes on to state that, "Gary declined to make any comment regarding whether or not the items delivered by Bagley were stolen." *Id.* at 17–18. Contrary to trial counsel's assumption that Gary's admission must have been contained in one of the letters exchanged between his client and Officer Verhagen, *see* Record at 24, it is clear from the text of the presentence report that these statements were based on a personal interview of Gary by Verhagen. Moreover, although Gary himself declined to comment on whether the chemicals were stolen, other sections of the presentence report indicate that the farm chemicals which Bagley delivered to Scalzo were indeed stolen. *See, e.g.,* Presentence Report at 10. These sections of the report were based upon an interview with Terry Lee Jensen concerning his own personal participation in the various robbery schemes; hence Judge Crabb's response at the hearing was quite correct:

> Well, I have the statement in the presentence report and I have given it consideration, but I believe that it's corroborated by other statements in the presentence report, including the information furnished by Mr. Jensen.

Record at 24–25.

The material upon which the judge stated that she relied was made available to defendants and their counsel on August 3, 1982, and they reviewed it on August 18. Rather than taking issue with any of the factual information contained in it, Gary Scalzo's attorney filed a motion to strike "all or portions" of it, alleging in conclusory fashion that the report included hearsay and various other types of unreliable information. The motion was supported by reliance upon *United States v. Weston,* 448 F.2d 626 (9th Cir.1971), for the general proposition that a sentence must be based on reliable information.

*Weston* was a case in which the trial judge, after initially expressing a belief that the five-year statutory minimum sentence would be appropriate, changed his mind after reading a presentence report

which contained allegations that the defendant was a major distributor of narcotics in the region and sentenced her to the 20-year maximum. 448 F.2d at 628. Weston vigorously denied these charges, and the court of appeals subsequently found that they were not adequately supported by the material contained in the confidential report. *Id.* at 630. In the case at hand, by contrast, counsel was given an opportunity to review the presentence report prior to the sentencing hearing and to submit material to refute it. No facts were specified as inaccurate; and the dispute over Gary Scalzo's "admission," discussed above, turns out to have been largely semantic. Moreover, we have found the authenticity of the statements in question to be amply supported by the information in the report.

A second, although related, claim presented by the appellants here is that Judge Crabb concluded that the present offense was part of a pattern of criminal behavior based on information which was not only hearsay but was obtained from sources who were not credible. Appellants object that Judge Crabb did not allow the defendants' counsel to cross-examine the officer who had obtained the information. On these points, we note, first, that reliance upon hearsay and other types of inadmissible information in assessing the factors affecting punishment is not *per se* improper. *Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959); *Williams v. New York,* 337 U.S. 241, 252, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337 (1949); *United States v. Harris,* 558 F.2d 366, 372 (7th Cir.1977). Second, based on the commentary to Rule 32, the Advisory Committee did not contemplate that a Probation Officer would be required to testify at the hearing at all, much less be subjected to cross-examination by defense counsel:

> It is not intended that the probation officer would be subjected to any rigorous examination by defense counsel, or that he will even be sworn to testify.

Fed.R.Crim.P. 32 advisory committee note. Third, as a general rule, sentencing relief is foreclosed to defendants who have been

given access to the presentence report but have failed specifically to challenge the accuracy of information contained within it, *United States v. Harris,* 558 F.2d at 375; *see also United States v. Trevino,* 490 F.2d 95, 96 (5th Cir.1973) (per curiam).

It is difficult to discern from the briefs on appeal what specific factual inaccuracies the appellants would have us review. Judge Crabb based her conclusion about a pattern of criminal conduct upon statements by the parties themselves and by Terry Lee Jensen, a participant in their schemes. Record at 5–6. But, aside from Gary Scalzo's "admission," discussed above, the parties do not dispute the statements attributed to them. Thus the only remaining issue relating to the reliability of information in the presentence report is apparently a general challenge to the credibility of Terry Lee Jensen.[6] The particular concerns expressed were that Jensen may have had a motive to inform on the Scalzos, in order to avoid prosecution or a more severe punishment himself, that he may have had a criminal record and have been inherently unreliable as a source of information and that much of his information may have been based upon hearsay. Record at 25–28. The district court responded that it had considered Jensen a reliable source because his statements were against penal interest and that weight had been given only to his descriptions of events in which he had been personally involved. These were events in which Jensen himself had participated in the delivery of stolen goods. Record at 26–28.

We see no reason to question Judge Crabb's conclusion. Jensen's information about occasions upon which he had personally participated in the criminal schemes to which the Scalzos had pled guilty was very detailed, lengthy and specific. The Scalzos were given an opportunity to challenge any of the factual assertions which were based upon Jensen's information both prior to and at the sentencing hearing. Concerns about his credibility were made known to Judge Crabb at the hearing, and she considered them prior to sentencing. In short, she complied rigorously with the command of Rule 32(c)(3)(A) to

> afford the defendant or his counsel an opportunity to comment [on the presentence report] and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

Fed.R.Crim.P. 32(c)(3)(A). The law requires no more.

IV.

Appellants also contend that the presentence reports under consideration here were "group" reports, containing generalized statements about "the Scalzos" rather than individualized assessments; appellants cite *U.S. v. Ramirez,* 513 F.2d 72 (5th Cir.), *cert. denied,* 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975), as authority that reliance on this "group" information constitutes an abuse of discretion. At issue in *Ramirez,* however, was whether one defend-

---

**6.** The transcript of the hearing reveals that counsel for the defendants raised a number of challenges there which they do not appear to be pressing before us: Gary Scalzo's attorney requested but was denied the right to cross-examine Officer Verhagen about certain convictions attributed to his client which may have been remote in time, but the request was denied when Judge Crabb stated that she had not considered any of these convictions. Record at 25. James Scalzo made specific challenges to material in the presentence report at pages 19 and 24, relating to the defendants' reputation in the community as "fences" for stolen goods, but was told that the judge had disregarded all the general information and given credence only to the specific instances cited by particu-

lar informants and described in the summary of the confidential report. Record at 43–44. With respect to other specific challenges to the accuracy of information in the presentence report, Judge Crabb, in the exercise of her discretion under Rule 32(c)(3)(A), expressed her willingness to allow James Scalzo and his wife to give testimony contradicting this information. This indulgence by Judge Crabb was given over the state's vigorous objection that James Scalzo and his counsel had already had ample opportunity to do so and had in fact submitted a letter which the judge had seen. Record at 46–50. Yet James Scalzo, after consultation with his attorney, decided not to testify and specifically withdrew his motion to strike those portions of the report. Record at 50.

ant's presentence report had been read by the court prior to adjudication of his guilt. This practice had been held to be *per se* reversible error by the Supreme Court in *Gregg v. United States,* 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969). In the case at hand, of course, we are dealing with an entirely different problem, where all three defendants had pled guilty to conspiracy and the judge's task was to mete out sentences appropriate to the relative degrees of guilt of the respective defendants.

Appellants cite the Fifth Circuit prophylactic rule of *Ramirez* which requires that presentence reports in multiple defendant cases be sanitized of all references to co-defendants (except in the official version of the offense). The Fifth Circuit noted in *Ramirez* that this procedure was particularly appropriate in cases where one defendant is to be sentenced before his co-defendant's guilt is adjudicated. 513 F.2d at 77–78 n. 4. But we see no reason to adopt such a rule in a case such as the one before us, involving, as it does, a guilty plea and a comparative assessment of the relative degrees of responsibility of participants in a conspiracy.

More importantly, we note that the presentence report prepared for each defendant here contained highly individualized sections about the personal and family history of the respective individuals. Judge Crabb seems clearly to have taken all of this information into account in the quite individualized sentences she meted out—a burdensome restitution requirement for Dom Scalzo, based on evidence that he was the leading force in the conspiracy, coupled with a shortened prison sentence, due to his age and ill health; differing periods of incarceration for James and Gary Scalzo, based on evidence that Gary was a follower rather than a leader in relation to the criminal activities conceived by James and Dom. ▮ These particularized sentences support the view that Judge Crabb did indeed make individualized rather than group determinations about the co-defendants' culpability and just deserts. Although appellants argue to us that the sentences im-

posed here were, in the total circumstances of the case, excessive, we have no authority to review sentences which are, as these, within the statutory range, *Dorszynski v. United States,* 418 U.S. 424, 440–41, 94 S.Ct. 3042, 3051–52, 41 L.Ed.2d 855 (1974); *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Harris,* 558 F.2d at 372. Our review is limited, instead, to scrutiny of the judicial process by which the punishment was determined. *Dorszynski,* 418 U.S. at 443, 94 S.Ct. at 3052; *United States v. Harris,* 558 F.2d at 372. Our assessment of Judge Crabb's application of the standards of Rule 32 of the Federal Rules of Criminal Procedure strongly indicates our approval of her conclusions. Since the district court complied with the requirements of Rule 32, the judgment is AFFIRMED.