Filed 10/29/20  P. v. Pina CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL VICENTE AVALOS PINA,<br><br>    Defendant and Appellant. | H047354<br>(Santa Clara County<br>Super. Ct. No. C1802116) |

## I.  INTRODUCTION

Defendant Miguel Vicente Avalos Pina[1] pleaded no contest to assault with a firearm (Pen. Code, § 245, subd. (a)(2))[2] and admitted that he personally used a firearm in the commission of the offense (§§ 667, 1192.7).  The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including that he abide by gang conditions.

On appeal, defendant contends that the trial court imposed the gang conditions based on unreliable information in the probation report, and therefore he was denied due

---

[1] The record on appeal contains documents in which defendant's middle name is variously spelled "Vicente" or "Vincente."

[2] All further statutory references are to the Penal Code unless otherwise indicated.

process. Defendant also argues that the gang conditions are invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).

For reasons that we will explain, we will affirm the order of probation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Offense*[3]

In May 2018, the police were dispatched to a parking lot at a market upon a report of an assault with a deadly weapon. When the police arrived, they located defendant's wallet in a car, but defendant had already fled the scene. According to witnesses and video surveillance, defendant was talking to an unidentified individual when a second unidentified individual punched defendant in the face. Defendant and the second individual proceeded to engage in a fist fight while the first individual swung a scooter at defendant. The second individual sat inside defendant's vehicle and argued with defendant. The second individual eventually exited the vehicle, and defendant handed him some items. As the two individuals walked away, defendant pulled a handgun from his vehicle and shot at them. One of the rounds struck a vendor's cart. After further investigation and surveillance, defendant was arrested a few months later.

### B. *The Charges and Plea*

In October 2018, defendant was charged by complaint with assault with a firearm (§ 245, subd. (a)(2); count 1) and discharging a firearm with gross negligence (§ 246.3, subd. (a); count 2). The complaint further alleged that defendant personally used a firearm in the commission of the assault (§§ 667, 1192.7).

On May 16, 2019, defendant pleaded no contest to count 1, assault with a firearm, and admitted the allegation that he personally used a firearm. Defendant entered his plea

---

[3] As defendant was convicted by plea, the facts underlying his offense are taken from the probation report, which was based on a police report.

and admission with the understanding that he would be placed on probation, serve one year in county jail, and that count 2 would be dismissed at the time of sentencing.

### C. *Probation Report and Sentencing*

The probation officer's report included the above summary of defendant's offense, which was based on a police report. The probation officer further wrote: "Witnesses recognized [the two individuals with whom defendant had been in an altercation] as Sureno gang members, who frequented the area and referenced themselves as Surenos. The defendant was a known affiliate with Norteno gangs and was wearing a red baseball hat." The probation officer explained that when he interviewed defendant, defendant "denied any gang affiliation, although he has a visible tattoo of 'SJ' near his right ear." In recommending gang conditions, the probation officer wrote as follows: "Due to the defendant being affiliated with Norteno gangs and wearing a red baseball cap during the present offense, gang conditions are included to help monitor the defendant during his supervision period, to deter future criminal conduct and provide a positive period of rehabilitation."

The sentencing hearing was held on July 10, 2019. At the hearing, defense counsel objected to "some" of the recommended conditions, which he characterized as "gang conditions."[4] Defense counsel contended that "the only basis for the request [of

---

[4] In objecting to the "gang conditions," defendant's trial counsel specifically identified condition "numbers 12 through 15 and number 17." Those conditions generally prohibit defendant from associating with gang members (condition No. 12), remaining in a location known to be an area of gang related activity (condition No. 13), being within 50 feet of a school during school hours (condition No. 14), and being present at a court proceeding if a gang member is present or the proceeding concerns a gang member (condition No. 15), and defining gang by reference to section 186.22 (condition No. 17).

We observe that another recommended probation condition (No. 11) generally prohibits defendant from possessing, wearing, or displaying any clothing, insignia, tattoo, or hat that is evidence of an affiliation with, or membership in, a gang. Defendant did not object to this condition below, nor does he object to this condition on appeal.

gang conditions] is that a woman who works at a taco cart in the grocery store parking lot thinks that the two unidentified suspects were Southern and she believes [defendant] was wearing a red hat and is a Norteño." Defense counsel argued that defendant had "never been validated as a gang member," had "never had any gang allegations attached to any crimes," and there was "no information about subsets of gangs." Defense counsel further argued that the police report "indicates that the victim's wearing a red jacket. So the basis of him wearing a red hat doesn't have any basis to say this was a gang crime."[5]

The prosecutor responded that "the People hadn't negotiated for gang terms," but that "[p]robation provided justifications." The prosecutor proceeded to "submit on probation's requests."

The trial court ruled as follows: "I think there are some indications in the probation report of possible gang involvement. If [defendant] claims he's not a gang member, then those restrictions shouldn't be onerous on him so I'm going to leave them in." The trial court suspended imposition of sentence and placed defendant on probation for three years with various terms and conditions, including that he serve one year in county jail and abide by the recommended gang conditions. The remaining count was dismissed.

### III. DISCUSSION

A. *Due Process*

Defendant contends that the trial court imposed gang conditions based on unreliable information in the probation report, and therefore he was denied due process. He contends that his objection to the gang conditions below was sufficient to preserve his due process challenge on appeal. (See *People v. Eckley* (2004) 123 Cal.App.4th 1072, 1077-1078 (*Eckley*) [finding no forfeiture of due process claim where the defendant

---

[5] The record does not reflect that the trial court was provided with a copy of the police report. The police report is not contained in the record on appeal.

4

raised below, and on appeal, the same inconsistencies between the sentencing documents and the trial evidence].)  The Attorney General, without addressing the issue of forfeiture, contends that defendant's due process rights were not violated.  Assuming, without deciding, that defendant's due process challenge has not been forfeited, we turn to the substance of his claim.

"Due process does not require that a criminal defendant be afforded the same evidentiary protections at sentencing proceedings as exist at trial.  [Citations.]" (*People v. Lamb* (1999) 76 Cal.App.4th 664, 683 (*Lamb*).)  "Although not all the procedural safeguards required at trial also apply in a sentencing or probation hearing, such a hearing violates due process if it is fundamentally unfair.  [Citation.]  'Reliability of the information considered by the court is the key issue in determining fundamental fairness' in this context.  [Citation.]  A court's reliance, in its sentencing and probation decisions, on factually erroneous sentencing reports or other incorrect or unreliable information can constitute a denial of due process." (*Eckley*, *supra*, 123 Cal.App.4th at p. 1080.)

"A sentencing judge 'may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.' [Citation.]" (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754 (*Arbuckle*); accord, *People v. Tran* (2015) 242 Cal.App.4th 877, 888, fn. 5 (*Tran*).)  The sentencing judge may also consider and rely upon hearsay statements contained in a probation report, including the police reports used to prepare the crime summaries contained in the report. (*People v. Otto* (2001) 26 Cal.4th 200, 212 (*Otto*).)  "Fundamental fairness, however, requires that there be a substantial basis for believing the information is reliable.  [Citation.]" (*Lamb*, *supra*, 76 Cal.App.4th at p. 683.)  "If the defendant feels the probation report is insufficient or inaccurate, or is based upon unreliable information, he or she may present witnesses to counteract or correct any portion of the report. [Citation.]" (*People v. Bloom* (1983) 142 Cal.App.3d 310, 320 (*Bloom*).)

In this case, the trial court could properly rely on the information in the probation report, which was based on a police report, regarding the circumstances of the offense, including that the two unidentified individuals involved in the altercation were Sureño gang members and that defendant was an affiliate with Norteño gangs. (See *Otto*, *supra*, 26 Cal.4th at p. 212; *Arbuckle*, *supra*, 22 Cal.3d at p. 754; *Tran*, *supra*, 242 Cal.App.4th at p. 888, fn. 5.) Further, the probation report itself indicated that there was a sufficiently reliable basis for the witnesses' conclusions regarding gang membership and/or affiliation. Specifically, witnesses had "recognized" two of the participants "who frequented the area and referenced themselves as Surenos," and that "defendant was a known affiliate with Norteno gangs." Consistent with defendant's apparent affiliation with Norteño gangs, he was reportedly wearing a red baseball hat at the time of the offense. Indeed, on appeal, defendant acknowledges that at the time of the offense, "[he] was wearing gang colors—a red baseball hat."

If defendant believed the probation report was "insufficient or inaccurate, or . . . based upon unreliable information," he could have offered witnesses or other evidence "to counteract or correct . . . the report." (*Bloom*, *supra*, 142 Cal.App.3d at p. 320.) Defendant did neither. Instead, his trial counsel presented only argument in an attempt to diminish the reliability of the statements in the probation report. The trial court was not required to accept counsel's arguments. Moreover, regarding trial counsel's contention that defendant had never been "validated as a gang member" and that no gang allegation had been attached to any crime, defendant on appeal does not cite any authority requiring either of these circumstances as a prerequisite to a court's determination that information in a probation report about gang membership or gang association is sufficiently reliable.

The cases defendant cites in support of his argument regarding the unreliability of the statements in the probation report are inapposite. For example, the trial court in this case did not rely on "inaccuracies in the . . . sentencing documents." (*Eckley*, *supra*, 123

6

Cal.App.4th at p. 1081.)  Nor did the trial court base its decision on "misinformation or misreading of court records."  (*Townsend v. Burke* (1948) 334 U.S. 736, 741.)

Also distinguishable is *United States v. Weston* (9th Cir. 1971) 448 F.2d 626 (*Weston*).  In *Weston*, a presentence report indicated that the defendant was the chief supplier of heroin for a particular geographic area.  (*Id.* at p. 628.)  The Ninth Circuit determined that the factual basis for believing this "very serious" allegation "was almost nil.  It rested upon only two things:  the opinion of unidentified personnel in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some information lending partial support to the charge."  (*Id.* at p. 633.)  Regarding the latter unsworn statement, which the Ninth Circuit had before it, the court stated:  "To say that it corroborates the very broad charges contained in the pre-sentence report is an over-statement.  Moreover, it contains nothing to show . . . that the informant was reliable, or otherwise to verify the very serious charge made against [the defendant]."  (*Id.* at p. 630.)  The court held that "a sentence cannot be predicated on information of so little value as that here involved."  (*Id.* at p. 634.)  The court remanded the matter with directions that the information in the presentence report not be relied on "unless it is amplified by information such as to be persuasive of the validity of the charge there made."  (*Ibid.*)

In this case, there is nothing to indicate that the underlying police report was based on the "unverified statements of a faceless informer," or that the police report otherwise failed to "corroborate[]" the statements in the probation report.  (*Weston*, *supra*, 448 F.2d at pp. 631, 630.)  Defendant's trial counsel apparently had access to the police report but only offered his own characterizations and argument about the content of the police report.  At the same time, the probation report itself recited that the witnesses had "recognized" two of the participants "who frequented the area and referenced themselves as Surenos," and that "defendant was a known affiliate with Norteno gangs."  The probation report itself demonstrated the basis for the witnesses' conclusions about gang

7

membership. We conclude that defendant's due process right was not violated by the trial court's reliance on information in the probation report to impose gang conditions.

### B. *People v. Lent* (1975) 15 Cal.3d 481

Defendant contends that the gang conditions are invalid under *Lent*, and that his claim is cognizable on appeal. The Attorney General contends that defendant fails to show an abuse of discretion by the trial court in imposing the gang conditions.

Although defendant did not expressly state below that he was raising a *Lent* challenge, he clearly indicated at sentencing that he did not believe the record supported the imposition of gang conditions. In this court, the Attorney General does not argue that the *Lent* challenge has been forfeited. We will assume that defendant preserved the claim and consider the substance of his argument.

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety . . . . [Citations.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121; see § 1203.1, subd. (j).) "On appeal, we ' "review conditions of probation for abuse of discretion." ' [Citation.] Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' [Citation.]" (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)

Under the *Lent* test, " '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' [Citations.] The Lent test 'is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.' [Citation.]" (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.) Regarding the third prong, whether the probation condition is reasonably related to future criminality, there must be "more than just an abstract or hypothetical relationship," and there must be "a degree of proportionality between the burden imposed by a probation condition and the legitimate

interests served by the condition." (*Id.* at p. 1121, 1122.)  A gang condition is not reasonably related to future criminality if "the record divulges (1) no ties between defendant and any criminal street gang, (2) no such ties involving any member of defendant's family, and (3) no criminal history showing or strongly suggesting a gang tie." (*People v. Brandão* (2012) 210 Cal.App.4th 568, 576.)

In this case, defendant contends that all three prongs of the *Lent* test are satisfied. In arguing that the gang conditions meet the first and third prongs because the gang conditions have no relationship to his crime and are not reasonably related to future criminality, we understand defendant to be contending that there is insufficient or unreliable information that he associated with a gang or that the other two participants were gang members.

As we have explained, however, the trial court properly relied on the information in the probation report that defendant associated with a gang and that the other two participants in the incident were gang members.  In view of the information that defendant associated with a gang, and that his offense arose from his interaction with gang members in or about his vehicle, culminating in him shooting at them in a market parking lot and striking the cart of an innocent bystander, we determine that the gang conditions imposed by the court are related to his crime and reasonably related to future criminality.  On this record, we find no abuse of discretion in the trial court's imposition of gang conditions.

## IV.  DISPOSITION

The order of probation is affirmed.

 

 

 

_____

BAMATTRE-MANOUKIAN, J.

 

 

WE CONCUR:

 

 

 

_____

GREENWOOD, P.J.

 

 

 

_____

ELIA, J.

 

 

 

***People v. Avalos Pina***
**H047354**